UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| ANTHONY W. TAYLOR, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>KILOLO KIJAKAZI,[1] )<br>Acting Commissioner of Social Security, )<br>)<br>Defendant. ) | CAUSE NO. 1:20CV88-PPS |

## OPINION AND ORDER

Anthony W. Taylor filed applications for disability insurance benefits and supplemental security income, alleging disability beginning September 18, 2017, when he was 39 years old. [AR at 15, 23.][2] An administrative law judge held a hearing on Taylor's applications on June 26, 2019, at which Taylor appeared and testified, accompanied by an attorney. [*Id.* at 15.] The ALJ issued her decision on July 25, 2019, finding that Taylor has a number of severe impairments: amputations of the right great toe and second toe, obesity, and diabetes mellitus with peripheral neuropathy [*Id.* at 18.] She agreed with the vocational expert that Taylor is no longer able to perform past jobs he has held as a Machinist and Machine Feeder. [*Id.* at 23.] But the ALJ ultimately concluded that Taylor is not disabled because he retains the residual functional capacity

---

[1] The automatic substitution of the Acting Commissioner occurs pursuant to Fed.R.Civ.P. 25(d).

[2] The administrative record [AR] is found in the court record at docket entry 11, and consists of a total of 373 pages. I cite to the pages of this AR according to the Social Security Administration's Bates stamp numbers rather than the court's Electronic Case Filing page number.

to perform sedentary work with some specified limitations. [*Id*. at 19.] The Appeals Council denied Taylor's request for review, leaving the ALJ's denial of benefits as the Social Security Administration's final decision.

## **Standard of Review**

My review of the Commissioner's decision is deferential. I must affirm it if it is supported by substantial evidence, meaning "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011) (citation omitted). The role of the courts is "extremely limited," and I am "not allowed to displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). I can't reweigh the evidence or substitute my judgment for that of the ALJ. *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015). But these standards do not mean that I "will simply rubber-stamp the Commissioner's decision without a critical review of the evidence." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

When considering the evidence, "an ALJ is not required to provide a complete and written evaluation of every piece of testimony and evidence, but 'must build a logical bridge from the evidence to his conclusion.'" *Minnick*, 775 F.3d at 935, quoting *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005). This means that an ALJ's decision must offer an explanation of its rationale "sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford [the claimant] meaningful judicial review." *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014).

2

## **The Listings**

As the ALJ explained, step three of the sequential process for evaluating disability claims involves determining whether the claimant's impairments "meet or medically equal the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1" of the Social Security regulations. [AR at 16.] These "Listings" specify the criteria for impairments that are presumptively disabling. If both a Listing and a duration requirement are met, the claimant is disabled. 20 C.F.R. §404.1520(d). Taylor argues that the ALJ's Listing analysis was deficient in several ways. Unfortunately for Taylor, although his criticism is accurate, those shortcomings do not support remand under the law applicable to his case.

The ALJ considered three listings implicated by Taylor's medical condition. The first was Listing 1.05 relating to amputation. Applying the potentially applicable regulatory standard of 1.05B, the ALJ concluded that "the evidence does not establish an amputation of one or both lower extremities at or above the tarsal region, with stump complications resulting in medical inability to use a prosthetic device to ambulate effectively, which have lasted or are expected to last for at least 12 months." [AR at 18.] The toes being below the tarsal region of the foot and ankle, the amputations of two of Taylor's toes do not meet the requirements of Listing 1.05. The ALJ offered no further explanation why Taylor's condition does medically equal the severity of Listing 1.05.

The ALJ also considered Listings implicated by Taylor's diabetes and neuropathy, Listings 9.00 and 11.14, but concluded that Taylor "does not meet or equal" those Listings. As with Listing 1.05, the ALJ's explanation was limited to a verbatim recitation of the Listing language found to be inapplicable (relating to either "disorganization of motor function" resulting in extreme limitation in balance while standing or walking, or marked limitation in physical functioning paired with one from a list of mental and social limitations), with no further explanation why Taylor's condition does not medically equal the Listing's severity.

As Taylor points out, in the past the Seventh Circuit has found a conclusory and inadequate consideration of the Listings to be a basis for remand. Speaking of an ALJ's two-sentence dismissal of a Listing, the court said: "This is the very type of perfunctory analysis we have repeatedly found inadequate to dismiss an impairment as not meeting or equaling a Listing." *Minnick*, 775 F.3d at 935-36, citing *Kastner v. Astrue*, 697 F.3d 642, 647-48 (7th Cir. 2012); *Barnett v. Barnhart*, 381 F.3d 664, 670 (7th Cir. 2004); *Brindisi v. Barnhart*, 315 F.3d 783, 786 (7th Cir. 2003). In Taylor's case the ALJ's determination as to each Listing was expressed in a single conclusory sentence. As in each of the cited cases, the ALJ's treatment of the Listings is "devoid of any analysis that would enable meaningful judicial review." *Brindisi*, 315 F.3d at 786.

But the regulatory framework has changed since the cases on which Taylor relies. As of March 27, 2017, the applicable Social Security Ruling expressly provides that the ALJ need not be more detailed in articulating her finding of non-equivalence.

4

> If an adjudicator at the hearings or AC level believes that the evidence already received in the record does not reasonably support a finding that the individual's impairment(s) medically equals a listed impairment, the adjudicator is *not required to articulate specific evidence* supporting his or her finding that the individual's impairment(s) does not medically equal a listed impairment. Generally, a statement that the individual's impairment(s) does not medically equal a listed impairment constitutes sufficient articulation for this finding. An adjudicator's articulation of the reason(s) why the individual is or is not disabled at a later step in the sequential evaluation process will provide rationale that is sufficient for a subsequent reviewer or court to determine the basis for the finding about medical equivalence at step 3.

Social Security Ruling 17-2p, 2017 WL 3928306, at *4 (emphasis added). Although the Commissioner's response does not rely on this regulation to defeat Taylor's argument, it seems plainly applicable to his case because he filed his application on October 12, 2017. [AR at 15.] The Seventh Circuit has recognized that under the March 2017 regulation the ALJ does not have to separately discuss equivalence: "an ALJ need not articulate specific evidence supporting a finding that an impairment does not medically equal a listed impairment; a simple statement of non-equivalence will suffice." *Deloney v. Saul*, 840 Fed.Appx. 1, 4 (7th Cir. 2020).

Taylor also objects that the record before the ALJ contained "no medical opinion evaluating medical equivalence that considers *all* of Plaintiff's impairments." [DE 13 at 12 (emphasis in original).] The State Agency medical consultants noted that Taylor's impairments of peripheral neuropathy and diabetes mellitus were both "Severe," and considered only Listing 11.14 for peripheral neuropathy, omitting consideration of the Listing for amputations. [AR at 56-7; 65-6; 75; 84.] Taylor also contends that the State

5

Agency consultants' assessment is unsupported due to their failure to consider Taylor's use of a cane or the medical report by Taylor's treating physician Dr. Ringenberg, and their inadequate consideration (a mere notation – "claimant with obesity") of Taylor's body mass index. [DE 13 at 10-12.] Similarly, Taylor argues that the ALJ's cursory analysis at step three omits consideration (or any mention at all) of the impact of Taylor's "obesity and diabetes as they relate to each other and his other symptoms." [DE 13 at 13.]

In all these matters, Taylor's critique of the administrative analysis is factually correct. But, as I noted earlier, the SSR 17-2p regulations applicable to Taylor's case don't require the ALJ to offer a discussion of evidence that she finds does not establish Listings or medical equivalence. Similarly, the requirements for an ALJ to consider expert medical opinion on the question of equivalence are not stringent: "If an adjudicator at the hearings or AC level believes that the evidence does not reasonably support a finding that the individual's impairment(s) medically equals a listed impairment, we do not require the adjudicator to obtain ME evidence or medical support staff input prior to making a step 3 finding that the individual's impairment(s) does not medically equal a listed impairment." *Id.* *See also Shawn S. v. Saul*, No. 1:19CV4046, 2021 WL 363557, at *4 (S.D. Ind. Feb. 3, 2021) ("Under SSR 17-2p, SSA no longer 'require[s] the adjudicator to obtain [Medical Expert] evidence or medical support staff input prior to making a step 3 finding that the individual's impairment(s) does not medically equal a listed impairment'" (quoting SSR 17-2p, 2017 WL 3928306, at

6

\*4)); *Zieroth v. Saul*, No. 1:19CV181, 2020 WL 3490235, at \*3 (N.D. Ind. May 29, 2020) ("while ALJs must rely on experts to interpret medical evidence, they are not necessarily required to obtain a medical opinion specifically as to whether a claimant meets or equals a listing") (citing SSR 17-2p, 2017 WL 3928306, \*3-4 (Mar. 27, 2017) (explaining that ALJs determine whether a listing is met or equaled, and "may ask for and consider evidence from medical experts")), adopted by 2020 WL 3491979 (N.D. Ind. June 26, 2020).

Despite the change in the regulations, Taylor's arguments focus on critiques of the ALJ's opinion rather than offer an explanation of how Taylor's combined impairments do in fact equal the severity of one or more Listings. The claimant bears the burden of establishing that his impairments meet or equal the criteria of a listed impairment. *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006). Of course in order to affirm the denial of benefits, I must still be able to conclude that substantial evidence supports the ALJ's decision. The amended regulations are applicable to this step in my analysis as well. "An adjudicator's articulation of the reason(s) why the individual is or is not disabled at a later step in the sequential evaluation process will provide rationale that is sufficient for a subsequent reviewer or court to determine the basis for the finding about medical equivalence at step 3." Social Security Ruling (SSR) 17-2P, 2017 WL 3928306, at \*4 (effective March 27, 2017).

Taylor suggests that the ALJ did not adequately consider the impact of Taylor's obesity. [DE 13 at 13.] But his suggestion that his "obesity would aggravate his ability

7

to work and his other conditions" is not supported by citation to supporting medical evidence. [*Id*.] In her later discussion of Taylor's residual functional capacity, the ALJ considered Taylor's "elevated body mass index, which serves to further undermine his residual functional capacity," but after reviewing the physical consultative examination report of Dr. Stephen Parker concluded that "it does not appear elevated body mass index resulted in significant motor strength deficits or atrophy." [AR at 22.] Dr. Parker examined Taylor on January 23, 2018, noting that Taylor was 6 feet tall and weighed 345 pounds. [AR at 346.] Despite describing Taylor as having a "slow waddling gait" and a "low" ability to ambulate effectively, Dr. Parker reported that Taylor could walk 1 to 2 blocks and could stand for 45 minutes. [*Id*. at 350, 351, 346.]

The ALJ noted also that Dr. Parker found that Taylor's "station, sustainability, stability, and posture were normal," and "he retained 5/5 bilateral lower extremity strength, and had normal lower extremity reflexes." [AR at 22, citing AR at 350-52.] The ALJ concluded that "the objective clinical findings do not sufficiently support greater limitations than those defined within the restricted range of sedentary work," even taking into account "any difficulties with ambulation resulting from toe amputations, neuropathy, elevated body mass index, and reported hand difficulties." [AR at 22.]

I will later question the adequacy of the ALJ's conclusions concerning Taylor's RFC, but in relation to her determination that his limitations were not the equivalent of any presumptively disabling Listings, the ALJ's Residual Functional Capacity analysis

provides a sufficient rationale. The ALJ's review of the medical record to determine Taylor's RFC expressly acknowledges and considers all the issues Taylor highlights before me in his Listing equivalency argument – his diabetes, his resulting peripheral neuropathy, his history leading to the amputation of two toes, and his obesity. The RFC discussion sufficiently supports a conclusion that Taylor's limitations were not equal in severity to a "disorganization of motor function" resulting in extreme limitation in balance while standing or walking, that is Listing 11.14A. Taylor does not demonstrate reversible error in the ALJ's consideration of Listing equivalency under the applicable regulations, which no longer require the ALJ to obtain an expert medical opinion on the issue or to articulate a specific analysis supporting her Listing conclusions.

## The RFC Determination

Taylor challenges the ALJ's determination of his Residual Functional Capacity, that is, her determination of the limits of Taylor's ability to work finding him capable of performing sedentary work with certain articulated limitations. Taylor first contends that the ALJ erred by failing to assign a restriction for frequent bathroom breaks and did not properly account in the RFC for the impact of the necessary time off-task associated with his urinary issues. [DE 13 at 16-17.] To the contrary, the ALJ's decision demonstrates that substantial evidence did not exist to support a determination of greater time off-task. The ALJ expressly discussed Taylor's self-reported frequent urination, but noted that he takes no medication for the condition and offers no

9

"significant evidence of a urinary disorder." [AR at 18.]  In the absence of medical evidence concerning the condition and presented only with Taylor's testimony, the ALJ appears to have correctly determined that "the evidence does not establish significant limitations over 12 consecutive months in duration" resulting from urinary difficulties. [*Id.*, quoting 20 CFR 416.909.]

Taylor relies on the opinion of his treating physician, Dr. Thomas Ringenberg, who completed Physical Medical Assessment Forms about Taylor in August 2018 and again in May 2019.  Twice Dr. Ringenberg opined that Taylor would likely be off-task 25% or more of a typical workday.  [AR at 357, 362.]  Neither assessment makes any mention of urination issues. On the later form, Dr. Ringenberg has left blank all three spaces requesting identification of "the particular medical or clinical findings (i.e., physical exam findings, x-ray findings, laboratory test results, history, and symptoms including pain etc.) which support [his] assessment or any limitations and why the findings support the assessment."  [AR at 363, 364, 365.]  On the earlier assessment, Dr. Ringenberg left 2 of the 3 blanks empty, completing only the last one with a list of Taylor's medical issues ("pedal edema, amputated toes, dyspnea, poor balance, neuropathy, dizziness") making no mention of difficulties with urination.

The ALJ therefore reasonably concluded that "Dr. Ringenberg's opinions are not persuasive because they are not sufficiently supported," and that "the evidence does not establish that the combination of the claimant's impairments results in the excessive off-task behavior as opined by Dr. Ringenberg."  [AR at 20.]  Looking beyond these

10

check-box and fill-in-the-blank assessment forms, the ALJ also considered Dr. Ringenberg's May 2019 examination of Taylor, which the ALJ noted "does not tend to reflect any significant clinical findings that support his somewhat drastic opinions" of the same date. [AR at 20, citing AR at 367.] Taylor's contention is essentially that the ALJ should have determined an RFC limitation for significant time off-task, but Taylor points to no medical support for such a limitation other than Dr. Ringenberg's conclusory assessment, which the ALJ reasonably rejected.

Next Taylor argues that the ALJ erred by rejecting limitations based on the edema Taylor experiences in his legs, and his need to change positions frequently. [DE 13 at 17-18.] This argument pertains to the ALJ's finding that Taylor is capable of sitting for 6 hours per workday while performing sedentary work. [AR at 19.] The ALJ considered Taylor's testimony that he "elevates his legs for at least two hours everyday to improve circulation," but concluded that the "need to elevate legs is not well-documented by the record as being necessary to include within the residual functional capacity…, or that those two hours would need to be during work hours." [AR at 23.] Similarly, the ALJ acknowledged Taylor's testimony "that he can sit for 30 minutes before he feels burning pain," but concluded that "the objective clinical findings do not sufficiently support greater limitations than those defined within the restricted range of sedentary work." [AR at 22.]

Taylor cites no medical evidence addressing a need to elevate his legs or the need for a specific sit/stand limitation, both of which issues (like the frequent urination) were

11

presented only by his testimony. But part of the ALJ's responsibility is "accounting for an applicant's own account of [his] limitations or, at the very least, explaining why the applicant's description of [his] limitations is not reliable or accurate." *Noonan v. Saul*, 835 Fed.Appx. 877, 880 (7th Cir. 2020). As with the off-task restriction, Taylor's position is supported by the Physical Medical Assessment Forms of Dr. Ringenberg. The later of the two assessments decreases the estimate of how long Taylor can sit at one time, from 2 hours to 1 hour, and indicates that Taylor can sit or stand/walk less than 2 hours in an 8-hour work day. The ALJ's decision does not address these assessments by Dr. Ringenberg, focusing instead on rejecting Dr. Ringenberg's assessment of Taylor's limitations on standing and walking. [AR at 22.]

Again with this issue, I must contend (as the ALJ had to) with Dr. Ringenberg's failure to identify particular medical or clinical findings supporting his assessment of these limitations. But in contrast to the lack of medical evidence supporting being off-task for a quarter or more of the workday, severe limitations that *are* established by the medical record -- namely Taylor's obesity, peripheral neuropathy and amputations -- obviously *could* support a need to change positions frequently and an inability to sit for lengthy periods, either or both of which may impair Taylor's ability to perform sedentary work. The ALJ did generally recognize that "the claimant's amputations, neuropathy, and elevated body mass index..support[] limiting the claimant to a restricted range of sedentary work[.]" [AR at 20.] But the ALJ's lengthy discussion

12

thereafter omits analysis of restrictions related to difficulty sitting for the 6 hours per workday that sedentary work generally requires.

Because Taylor's established severe limitations are objective clinical findings that may support greater limitations than those found by the ALJ, the decision's failure to explain why the RFC does not contain limitations allowing frequent change in position or a sit/stand option means her RFC analysis in this respect lacks the required "logical bridge" between the evidence and her findings. The ALJ's role requires her "to articulate the relevant evidence and explain how that evidence supports her ultimate determination." *Noonan*, 835 Fed.Appx. at 880. Taylor's case will be remanded for further consideration of these possible limitations on his ability to sit and their impact on his capacity to perform gainful employment.

Taylor next contends that the ALJ's conclusion concerning Taylor's abilities to perform handling and fingering tasks is inconsistent with the record. [DE 13 at 18-19.] To the contrary, the conclusion represented the ALJ's evaluation between conflicting medical assessments. Dr. Ringenberg's August 2018 assessment indicated that Taylor could occasionally perform various dexterity functions with his left hand, but could constantly perform them with his dominant right hand. [AR at 358.] By May 2019, Dr. Ringenberg assessed Taylor as being capable of only occasional handling and fingering tasks with either hand. [AR at 363.] But the record also contains the disability examination report of Dr. Parker, who tested Taylor in January 2018 and observed that

13

Taylor was able to demonstrate a full range of fine finger skills "with no hesitations." [AR at 347.]

For claims filed on or after March 27, 2017, the new regulations also changed how an ALJ must evaluate medical opinion evidence. Revisions to Rules Regarding the Evaluation of Medical Evidence, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. § 416.920c. The new regulations provide that an ALJ will no longer "give any specific evidentiary weight ... to any medical opinion(s) ..." Revisions to Rules, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; see 20 C.F.R. § 416.920c(a). Instead, the ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical sources' findings. 20 C.F.R. § 416.920c(a) and (b). The factors for evaluating the persuasiveness of medical opinions and prior administrative medical findings are familiar -- supportability, consistency, relationship with the claimant, specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 416.920c(c)(1)-(5).  Supportability and consistency are the most important factors.  20 C.F.R. § 416.920c(b)(2).

Dr. Ringenberg offered no reasons for his assessments of Taylor's use of his hands, even for his later finding of severe limitation, and Taylor cites no medical records of Dr. Ringenberg's treatment of Taylor that provide support for these opinions. The ALJ noted generally that "Dr. Ringenberg's May 2019 examination of the claimant does not tend to reflect any significant clinical findings that support his somewhat drastic opinions."  [AR at 20.] By contrast, the ALJ detailed Dr. Parker's consultative

14

examination during which Taylor "could use either hand, pick up a coin, button a shirt, zip a zipper, ties his shoes, open a jar, pick up keys, write with a pencil, grip and grasp objects, and shake hands," as well as Dr. Parker's finding that Taylor's "bilateral grip strength and upper extremity strength were 5/5." [AR at 21, citing AR at 347, 352.] Because the ALJ relied on the important factor of supportability, and more than "minimally articulated" her reasons for discounting Dr. Ringenberg's opinions about Taylor's hand use and crediting Dr. Parker's, I cannot overturn the conclusion. *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008) (quoting *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008)). Taylor does not demonstrate that the ALJ's conclusions about Taylor's use of his hands – limited to "frequent" handling and fingering rather than "constant" or merely "occasional"-- was error.

Finally with respect to the RFC, Taylor argues that there is no logical bridge to the ALJ's conclusions that Taylor is capable of "occasional" balancing, stooping, kneeling, crouching, and crawling, that he can stand or walk for two hours, and that he only needs a cane for ambulation. [DE 13 at 19-20.] Because the case is being remanded for reconsideration of Taylor's limitations on sitting, I do not analyze this issue for reversible error. But I do encourage a fresh analysis of Taylor's postural limitations and his ability to stand for up to 2 hours in a given workday, in light of the following evidence of record. Taylor testified that he has had balance issues since the amputation of the first toe in January 2018, and to his need of a cane any time he is "moving around more than maybe 10 feet," or doesn't have a wall or chair to lean on. [AR at 40.] He

15

also described the swelling in his legs if he stands too long, and the burning and nerve pain that interferes with standing and walking. [*Id*. at 42, 44.] During his consultative examination, Dr. Parker made findings of Taylor's "+2 edema" and his "low" ability to ambulate effectively, and also expressed the opinion that Taylor is ability to walk only 1-2 blocks and to stand for only 45 minutes. [*Id*. at 349, 351, 346.] Dr. Ringenberg similarly assessed that Taylor can stand or walk less than 2 hours in an 8-hour work day. [AR at 357, 362.] All of this evidence appears to be supported by the objective medical evidence of Taylor's peripheral neuropathy, his obesity, and the amputation of two toes, and may warrant reconsideration of Taylor's limitations in standing and walking.

The remaining issues raised by Taylor on appeal need not be addressed in light of the reconsideration his applications will receive on remand for the reasons already discussed.

## Conclusion

The ALJ's decision offers an inadequate analysis of Taylor's ability to sit for the lengths of time sedentary work requires. Without that explanation of a "logical bridge" between the evidence and her conclusions, I cannot say that the denial of benefits is supported by substantial evidence. On remand, further consideration of Taylor's ability to stand and walk may also be appropriate.

**ACCORDINGLY:**

The final decision of the Commissioner of Social Security denying plaintiff Anthony W. Taylor's applications for benefits is REVERSED and the matter is REMANDED to the Commissioner for further proceedings consistent with this opinion.

**SO ORDERED**.

ENTERED:  September 15, 2021.

                                                /s/ Philip P. Simon
                                              **UNITED STATES DISTRICT JUDGE**